## In re Anonymous 52 D.B. 77

Disciplinary Board Docket no. 52 D.B. 77.

PEARLSTINE, *Member,* November 12, 1981— Pa.R.D.E. 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement (Enforcement Rules), the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

By order of the Supreme Court of Pennsylvania dated January 16, 1979, petitioner was suspended from the practice of law for six months, which suspension became effective of February 15, 1979.

The term of suspension imposed by the Supreme Court of Pennsylvania having expired on August 16, 1979, petitioner filed his first application for reinstatement on September 11, 1979 and the matter was duly referred to hearing committee [  ] which filed its report recommending that respondent be reinstated.

On April 7, 1980, the board recommended to your honorable court that respondent's petition for reinstatement be granted. On May 19, 1980, your honorable court rejected the report and recommendation of the Disciplinary Board and denied the petition for reinstatement.

On February 14, 1981, petitioner filed the instant petition for reinstatement and reinstatement questionnaire, which was referred to hearing committee [  ], which on September 15, 1981 filed its report recommending reinstatement. No objections were filed to this report, which was subsequently referred to the board for review and to the writer of this report, who also wrote the report on April 7, 1980.

A petition for reconsideration of the court's May 19, 1980 order was denied on August 26, 1980 and on November 26, 1980, a petition was filed for leave to file a second petition for reinstatement in less than one year. This petition was granted on January 12, 1981, following which the petition for reinstatement presently before the court was duly filed.

## II. FACTUAL BACKGROUND

From the petitioner's questionnaire and the testimony adduced at the hearing before the hearing committee on May 18, 1981, the following facts were found:

[Petitioner] was 64 years of age in August of 1981, was admitted to the Bar in 1942 and continued as a highly respected member of the Bar until 1968. In that year, on behalf of investors in his family and himself, he purchased certain real estate in [ ], New Jersey, with a view to development. Being unsuccessful in obtaining zoning changes, he received an emissary from the zoning board who advised him to make a contribution to the board if he expected the zoning changes to be made. Two properties were involved. In the first case he paid a bribe of $30,000 to cause a change in zoning for a property originally purchased for $383,000 and subsequently sold for $660,000 as a result of the change in zoning. In the second situation, the total cost of the ground was $110,000 and bribes in the sum of $90,000 were paid by petitioner and following rezoning the property was sold for $910,000, of which $423,000 was paid in cash and the balance was in the form of a mortgage which was subsequently forclosed and the land is still owned by petitioner and his family. In the first situation, where the property was sold for $660,000, the profit was $276,000 less the $30,000 paid to the officials of $246,000, of which petitioner's family's share was $123,000 and his share was $41,000. In the other situation the profit was $224,000 of which petitioner's family's share was $60,000 and his own share was $20,000. Petitioner's family and petitioner still own the land as a result of the foreclo-

sure. The profits on these two transactions have been retained by petitioner and his family.

The Deputy Attorney General in the Division of Criminal Justice in the State of New Jersey began an investigation of the officials of the Borough of [ ], New Jersey. Petitioner made himself available as a witness and testified fully and frankly and became the state's chief witness in what turned out to be a successful prosecution of a number of [public] officials.

At the hearing before the hearing committee considering his first petition for reinstatement, a number of former clients testified, all of whom had received written notice of respondent's suspension and all of whom spoke highly of him as a lawyer, as an individual with high moral standing and principles. At the hearing to consider the second petition for reinstatement, letters were offered in evidence from five of the character witnesses who testified at the first hearing, who renewed their testimony in substance stating that they would like to reiterate their previous testimony with respect to the legal ability, character and integrity of petitioner. These letters were admitted in evidencve over the objection of Assistant Disciplinary Counsel.

[ ], Esq., petitioner's brother-in-law and former partner in the law practice of [ ] testified that the applicant had a reputation for skillful and able practice and without reservation integrity, which he described "of the highest caliber."

He stated that petitioner was not practicing law, was tending to family affairs and keeping abreast of the law since his suspension began in February of 1979. He stated that the partnership previously existing between himself and petitioner was terminated shortly before his suspension.

In answer to question 19(a) of his questionnaire

filed in this proceeding, petitioner stated that he has been reading Advance Reports of Pennsylvania Supreme, Superior and Commonwealth Courts and all District and County Reports from February 1979 to December 1979. After his convalescence from a heart attack he started again in July 1980 to read back reports and to keep current with the Legal Intelligencer, Atlantic Reports, District and County Reports. Additionally, he has attended lectures and seminars dealing with real estate developments, tax aspects of separation and divorce, and recent developments in the law afforded by all day seminars of the Pennsylvania Bar Institute.

At the conclusion of the hearing on May 18, 1981, Assistant Disciplinary Counsel [  ] made the following statement:

"In view of our inquiry into the Petition which revealed nothing unfavorable to [Petitioner] and in view of the answers to the the Questionnaire and the evidence that has been presented today, we would recommend that he be reinstated. Naturally this recommendation is not in anyway binding on the Hearing Committee, the Disciplinary Board or the Court."

The hearing committee, in its report filed September 15, 1981 and presently under consideration by the board, concluded inter alia as follows:

"Petitioner has demonstrated by clear and convincing evidence that he has the moral qualifications, competency and learning in law required for reinstatement to practice law in Pennsylvania and that his resumption of the practice of law within this Commonwealth will be neither detrimental "to the integrity and standing of the Bar or the administration of justice nor subversive to the public interest."

In light of the conclusion and recommendation of the hearing committee and the examination of the notes of testimony, the exhibits and the questionnaire, it is therefore the

## III.  RECOMMENDATION

The board recommends to your honorable court that respondent's petition for reinstatement be granted and that the court direct that the necessary expense incurred by the board in the investigation and processing of the petition for reinstatement be paid by respondent. A statement of such expense is appended to this report.

Mr. Daniels did not participate in the adjudication.

## ORDER

O'BRIEN, *C.J.*, and now, December 10, 1981, the recommendation of the Disciplinary Board dated November 12, 1981, is accepted and the petition for reinstatement is granted.

The expenses incurred by the board in the investigation and processing of the petition for reinstatement shall be paid by petitioner.

Mr. Justice Roberts, Mr. Justice Flaherty and Mr. Justice Kauffman dissent and would deny reinstatement.